## East Kentucky Beverage Co. v. Stumbo.

May 19, 1950.

Edward P. Hill, Judge.

Hobson & Scott for appellant.

Combs & Combs for appellee.

JUDGE CAMMACK—Reversing.

This·is another case where the cause of action is based upon the alleged finding of a foreign substance or object in a soft drink; in this instance, a contraceptive rubber in a bottle of Pepsi Cola. The appeal is from a $500 judgment in favor of Lee Stumbo, plaintiff below.

The principal argument urged for reversal is that the case should not have been submitted to the jury. Admittedly, the case is a very close one, in view of our ruling in the case of Seale v. Coca-Cola Bottling Works of Lexington, Ky., 297 Ky. 450, 179 S.W.2d 598; and Glasgow Coca-Cola Bottling Works v. Reed, 312 Ky. 731, 229 S.W.2d 438. In the latter case a $300 judgment was affirmed by our denial of an appeal in the action. In the Seale case the cause of action was based upon the alleged finding of ground glass in a bottle of Coca Cola. A mouse was said to have been found in a bottle of Coca Cola in the Reed case.

Lee Stumbo sent his 16-year old daughter to the

store of Lee Hall to get some soft drinks and some groceries. The store was about 200 yards from Stumbo's home. The girl returned with three bottles of Pepsi Cola in a sack and her other purchases. No persons other than members of Stumbo's family were present when he said he opened one of the bottles of Pepsi Cola, which spewed and fizzed as soft drinks usually do when they are opened. He said also that he noticed nothing unusual about the metal cap on the bottle. When he had drunk about half of his drink something from the bottle went into his mouth, and when he spat it out he found the object toward which complaint is directed. Stumbo said he immediately became nauseated and was sick for some time. He did not call in a doctor, nor was he later treated by one for his alleged suffering.

It was shown from the testimony of the store owner and his clerk that Pepsi Cola was purchased from the Eastern Kentucky Beverage Company. Cases of this beverage, as were those of several competing soft drink companies, were delivered to Hall's store and placed in a storeroom which adjoined the store proper. Other merchandise, as well as soft drinks, was stored there. There is no direct proof as to how long the bottle of Pepsi Cola in question remained in the storeroom before it was placed in the cooler in the store proper and later delivered to Stumbo's daughter. The store owner said at the time of the alleged happening (November 1947) soft drinks were still scarce and he was buying all he could get. On the other hand it was shown that sugar rationing, which was largely responsible for the shortage of soft drinks, was discontinued in the summer of 1947. There was also testimony showing that there was keen competition among the soft drink dealers in Eastern Kentucky.

It is obvious that the integrity of the bottle of Pepsi Cola and its contents is of prime importance in this case. It, along with other bottles of Pepsi Cola, in case lots, was delivered to the storeroom of Hall's store. The deliverers of other soft drinks had access to the storeroom, as did deliverers of other mechandise. There was no proof showing the duration of time between the delivery of the bottle to the storeroom and the placing of it in the cooler in the store proper. Nor was there any proof as to how long the bottle remained in the

68

cooler. The drink was not opened at Hall's store, but rather was carried by Stumbo's daughter some 200 yards to his home. There was ample opportunity for the bottle to have been tampered with or for a bottle to have been removed from a case of Pepsi Cola and one with a rubber in it placed in its stead.

The appellant offered proof similar to that presented in other cases of this character tending to show the high degree of care with which soft drink bottles are cleaned and handled at the bottling plant. This proof tends to show that it would be practically impossible for a foreign object or substance to find its way into a bottle during the process of filling and capping. An official of the Company demonstrated to the jury the improbability of the rubber having been placed in the bottle before it was first sealed. His testimony showed that, when such an article was placed in a bottle before it was originally sealed, it would be forced to the top by the escaping of gas when first opened. On the other hand, his demonstration showed that, in the event the cap were removed from the bottle and such an article placed therein, it would not rise to the top when the cap was opened a second time. This was attributed to the fact that gas escaped from the bottle in such amount when it was first opened that there would not remain sufficient gas to cause the article to rise to the top and spew out of the bottle when opened a second time.

We think this case is distinguishable from the Seale case. In that case Coca Cola in case lots was carried to a back room of a restaurant where it was stored. All of the beverage bought from the Coca Cola Company was stored and used as called for by the trade. The stock was replenished twice a week and only so much as was needed currently was bought at one time. Only two persons had access to the storeroom after delivery of the Coca Cola in question. One of these persons was in the Army at the time of the trial, and the other testified that, so far as he knew, no one had an opportunity to tamper with the bottle in question. In that case, as well as in the one at hand, the bottle spewed or fizzed when it was opened by the consumer.

Likewise, we think the case is distinguishable from the Reed case. The Coca Cola was delivered to the Pace Equipment Company. It was vended from a machine

owned by that Company. The bottles were placed in the machine by the Equipment Company's employees. The facts in that case are different from those in the case at bar, because there was a much more definite chain of circumstances which made the Bottling Company chargeable with the integrity of the bottle and its contents.

We do not think the doctrine of res ipsa loquitur (that of presumptive or prima facie negligence) should be extended to cover a situation such as we have before us. As pointed out by the Supreme Court of Tennessee, in the case of Coca-Cola Bottling Works v. Sullivan, 178 Tenn. 405, 158 S.W.2d 721, 171 A.L.R. 1200, a higher degree of proof should be required in the case of a bottled drink to show that there has been no reasonable opportunity to tamper with the bottle or its contents in the interim between the physical control of the bottler and that of the consumer.

Under the circumstances, we think the judgment should be and it is reversed, with directions to set it aside and for the giving of a peremptory instruction in favor of the appellant, if the evidence upon a second trial be the same.