**PADUCAH COCA–COLA BOTTLING COMPANY, Appellant,**

v.

**Tony HARRIS, Appellee.**

Court of Appeals of Kentucky.

April 25, 1958.

Rehearing Denied Oct. 10, 1958.

G. R. Effinger, Paducah, John P. Ryan, John C. Fogle, A. J. Deindoerfer, Boehl, Stopher, Graves & Deindoerfer, Louisville, for appellant.

Charles A. Williams, William Ely, Paducah, for appellee.

CULLEN, Commissioner.

Tony Harris recovered judgment upon a jury verdict for $12,500 against the Paducah Coca-Cola Bottling Company, as

damages for loss of the sight of his right eye resulting from the explosion of a bottle of Coca-Cola. The bottling company has appealed, contending that it was entitled to a directed verdict, and that the instructions were erroneous.

Harris purchased a case of mixed soft drinks, including a dozen Coca-Colas, from a country store. He placed the case in the trunk of his automobile and drove to his place of employment. Upon arrival there he opened the trunk and set the case of drinks on the ground. He then went into a nearby shack and brought out a wooden keg, which the workers customarily used as a receptacle for cooling soft drinks. The keg was empty. Harris picked up two Coca-Cola bottles between the fingers of one hand and set them in the keg. He testified that he did not drop or strike the bottles against anything while he was placing them in the keg. As he "started to raise up," one of the bottles exploded and particles of glass struck him in the eye. The bottle separated diagonally into two main pieces, one being the top one-third, with the cap still intact, and the other being the bottom two-thirds. The pieces were preserved and were introduced in evidence on the trial.

An expert witness for the plaintiff, having suitable qualifications, testified that in his opinion, based upon an examination of the pieces of the bottle in question and upon experiments he had conducted with other Coca-Cola bottles, the explosion of the bottle in question was due to internal pressure, and not to external impact; that the smooth break lines "would indicate a default" in the bottle; and that the fault or defect could have been discovered by rotating the bottle with a light behind it.

Two expert witnesses for the defendant, also suitably qualified, testified that from their examination of the pieces of the broken bottle it was clear that the explosion was the result of external impact; that when a bottle breaks as the result of impact it breaks immediately upon the impact;

that the maximum internal pressure that can be built up in a bottle of Coca-Cola, even at a temperature of 100 degrees and with violent agitation of the bottle, is 85 pounds per square inch, and a normal, sound Coca-Cola bottle will not break from internal pressure unless the pressure exceeds 500 pounds per square inch; that if a bottle was structurally defective or cracked at the time it was passing through the defendant's bottling machinery it would be broken by the capping machine.

Other evidence for the defendant was that the defendant's inspection procedures and devices were such that cracked, chipped or scuffed bottles would be discovered and rejected.

It is the contention of the bottling company that the plaintiff failed to prove that the bottle was in a defective condition when it was in the control of the company, or that the bottling operation was negligently conducted, and that the plaintiff cannot rely upon res ipsa loquitur because he failed to establish the "integrity" of the bottle. See East Kentucky Beverage Co. v. Stumbo, 313 Ky. 66, 230 S.W.2d 106; Ashland Coca-Cola Bottling Co. v. Byrne, Ky., 258 S.W.2d 475. The plaintiff maintains that he is not relying upon res ipsa loquitur, and that his proof established actual negligence.

If there had been any evidence introduced to show that a *filled* bottle of Coca-Cola may as a result of rough handling, or even as a result of deliberate tampering, be cracked or structurally weakened so that at some later time it will explode from only a slight impact or movement, there would be a good basis for the appellant's argument. In Dunn v. Hoffman Beverage Co., 126 N.J.L. 556, 20 A.2d 352, which is strongly relied upon by the appellant, there was such evidence. But the evidence for the appellant here was that if a bottle received an impact sufficient to break it, it would break immediately, and that the bottle in question did break as the result of external impact. The appellant's evidence precludes any pos-

sibility of the explosion being the result of tampering or rough handling between the time the bottle left the appellant's plant and the time it was purchased by the appellee.

Since the bottle did break, according to the evidence, without any material external impact at the time, and since the evidence was that a *sound* bottle could not break from internal pressure even though hot and violently agitated, the conclusion is reasonable that the bottle was defective when it was filled by the appellant bottling company. The question then remains as to whether the bottling company was negligent in not discovering the defect.

The evidence for the bottling company was that its inspection procedures and devices were designed to disclose cracked or chipped bottles, and that a substantial number of such bottles were discovered and rejected each day. The testimony of the plaintiff's expert witness was that a structural flaw in a bottle, such as in his opinion existed in the bottle in question, could have been discovered if the bottles were revolved when passing the inspection point, and particularly if the conveyor belt was operated more slowly. There was no evidence for the company that causing the bottles to revolve or move more slowly on the conveyor belt would be unreasonably burdensome.

In many respects the evidence here, as concerns discovery of the defect, is comparable to that in Gordon v. Nehi Beverage Co., 298 Ky. 836, 183 S.W.2d 795, in which it was held that there was sufficient evidence of negligence to take the case to the jury. That case alone would seem to be ample authority for holding the evidence here to be sufficient. However, further support is found in the decision in C. D. Herme, Inc., v. R. C. Tway Co., Ky., 294 S.W.2d 534, 537, in which it was held that it is the duty of the manufacturer to make such tests and inspections as should be recognized as being "reasonably necessary to secure production of a safe article,"

and that where the risk of danger is high the manufacturer must, if practicable and economically feasible, employ methods designed to "insure" a safe product. The evidence here would warrant the conclusion that there was a failure of duty on the part of the bottling company, either in the form of an omission of duty by an inspector or in the form of inadequate inspection procedures and devices.

It is our opinion that the defendant was not entitled to a directed verdict.

The instructions imposed upon the defendant the duty of exercising the "highest degree of care" in its bottling operations, defined to mean "the highest degree of care usually exercised by ordinarily careful and prudent manufacturers" of such products. The appellant maintains that its duty was only to exercise ordinary care, and that the instruction therefore was erroneous.

In the Tway case, above cited, after pointing out that the duty of the manufacturer is to use such care as is "reasonably necessary to secure production of a safe article," we said (294 S.W.2d 534, at page 537):

> "As we conceive it, the reasonableness of the care has relation to the accomplishment of the end to be achieved, namely, a reasonably safe product. This in turn has relation to the risk involved if the product is not safe. The test is not what other manufacturers are doing, or what is customary in the trade or industry. * * *
>
> \* \* \* \* \* \*
>
> "It would seem that ordinarily the question of whether reasonable care has been exercised will be for the jury, to be answered in accordance with the risk of danger involved, the availability of suitable safety methods, and the practicality and economic feasibility of employing methods designed to insure a safe product."

Since the normal consumer use of a Coca-Cola bottle involves close contact with hands and face, we think it is obvious that the risk of danger of personal injury from explosion of the bottle is extremely high. The manufacturer's duty of care is commensurate with the risk. Accordingly, the manufacturer of Coca-Cola has the duty to exercise the greatest care to guard against defects that might cause explosion.

We think a proper instruction would be one patterned after the opinion in the Tway case. The instruction given in the case now before us was not technically correct; however, its error was not in imposing the highest degree of care upon the defendant, but in using the standards of other manufacturers as the measure. This could not have been prejudicial to the defendant.

The judgment is affirmed.