**LOUISVILLE & JEFFERSON COUNTY BOARD OF HEALTH, Appellant,**

**v.**

**Darlene J. MULKINS, Appellee.**

Court of Appeals of Kentucky.

May 23, 1969.

As Modified on Denial of Rehearing
Oct. 24, 1969.

Fred M. Goldberg, Goldberg & Lloyd, Louisville, for appellant.

Cletus Amlung, Edward F. Rectenwald, Louisville, for appellee.

CULLEN, Commissioner.

Darlene J. Mulkins was employed as a laboratory technician in General Hospital in Louisville, which is operated by the Louisville & Jefferson County Board of Health. She sustained severe burns when,

as she was handling a glass jug containing nitric acid, the bottom fell out of the jug, with the result that the acid ran onto her legs and feet. She sued the board of health for damages and obtained verdict and judgment for $5,853.00. The board has appealed from the judgment.

The board of health could have elected to operate under the workmen's compensation law, but had not, so under KRS 342.410 it was deprived of the defenses of contributory negligence, assumption of risk and negligence of a fellow servant. Accordingly the issue of liability was simply whether the board was guilty of negligence proximately causing the injury. The plaintiff's primary theory of negligence was that a glass jug, absent a protective covering or special safeguards for handling, is not a reasonably safe container for nitric acid, wherefore the board of health violated its statutory duty under KRS 338.030 to furnish for its employes a safe place in which and safe facilities with which to work.

The evidence was that nitric acid was delivered to the hospital from the manufacturer in five-pint glass jugs, packaged six jugs to a carton, with corrugated cardboard or styrofoam shielding around each jug. Upon receipt at the hospital the jugs were removed from the carton and shielding and placed on shelves in a storage room. About one week before the accident Mrs. Mulkins had obtained a jug from the storage room and placed it in a metal cabinet under a sink in the laboratory room. Her purpose in so doing was to have the acid available for its prescribed use in one of her tasks of washing laboratory glassware.

On the day of the accident Mrs. Mulkins reached into the cabinet to get the jug of acid and as she lifted it out the bottom fell out of the jug. Apparently a crack somehow had developed in the jug which caused a separation when the bottom of the bottle was removed from the support of the shelf on which it had rested and the weight of the acid was thrown against the bottom in the lifting movement.

There was testimony for the plaintiff that in some other hospitals in the Louisville area bottles of nitric acid had been kept in individual metal containers with insulation or cushioning material between the metal and the glass. However, the testimony for the defendant was that all other hospitals in the Louisville area simply used the unprotected glass jugs as the defendant had done.

The primary contention of the board of health on this appeal is that its motions for a directed verdict and for judgment n. o. v. should have been sustained because the competent proof did not show negligence on the part of the board. However, in its argument the board fails utterly to face up to the question of whether a glass jug with no protection against breakage in handling is a reasonably safe container for nitric acid. The board argues that there is no proof of what caused the bottle to be cracked. As we see it, the particular cause of the cracking is irrelevant. The claimed negligence of the board is in furnishing a bottle that was susceptible of being cracked in normal use. The board also argues that the real cause of the accident was Mrs. Mulkin's failure to wear a protective apron. We find no merit in that argument, because obviously the failure to wear the apron did not cause the bottle to break; at the most the wearing of the apron might have limited the extent of the injuries potentially causable by an unsafe bottle, and that is a matter of contributory negligence which the board is barred from asserting.

The board's duty under the "safe place" statute was to exercise ordinary care to provide reasonably safe instrumentalities. Crush v. Kaelin, Ky., 419 S.W.2d 142. We think that the question of whether a particular instrumentality is reasonably safe should be answered in accordance with the extent of the risk involved, the availability of suitable safety methods, and the practicality and economic feasibility of employing methods designed to insure

safety. That is the test that this court evolved for products-liability cases prior to adoption of the strict liability rule. See C. D. Herme, Inc., v. R. C. Tway Co., Ky., 294 S.W.2d 534, and Paducah Coca-Cola Bottling Co. v. Harris, Ky., 316 S.W.2d 128. We think the test is fully appropriate in measuring the reasonable safety of an instrumentality for use of a workman. We shall undertake to apply it here.

■ Admittedly, nitric acid has a high potentiality of harm, in that it will cause severe burning upon contact with the human skin. So the containers in which it is kept reasonably should require more protection against breakage than a container for a harmless liquid such as water. It is a matter of common knowledge of laymen that a simple glass jug may crack if it receives a sharp blow, or is bumped against something hard, or is set down with too much force on a hard surface. Such cracking in normal use is not highly improbable but rather may well be anticipated. The evidence in this case shows that safety measures to guard against cracking were conveniently available in that the bottles were delivered to the hospital with cardboard or styrofoam shields in which they could have been stored, both in the storage room and on the laboratory shelves. Further there was the evidence of the availability of individual metal outer jackets with cushioning, the cost of which apparently was not prohibitive since some other hospitals had used them.

■ It is our conclusion that under the evidence in this case there was ample basis for the jury to find that the unprotected glass jugs, handled and used without special precautionary measures against breaking, were not reasonably safe for nitric acid. The determination of reasonableness under the test hereinbefore stated is properly a jury matter. Cf. C. D. Herme, Inc., v. R. C. Tway Co., Ky., 294 S.W. 2d 534.

■ The appellant's second claim of error is that the testimony of one Stratton O. Hammon, who was undertaken to be qualified as an expert on storage of nitric acid, was incompetent because Hammon was not established to be such an expert. Actually, the only testimony that the trial court permitted Hammon to give was that the "common method" of *storing* nitric acid in hospitals in the Louisville area was in a glass bottle encased in a metal container with a cushioning substance between the glass and the metal. It developed that Hammon's knowledge of the subject consisted of his having observed the use of such containers in three hospitals in Louisville on occasions 10 or more years previous to the time of the accident here involved. When asked as to a number of other hospitals he admitted that he did not know what type of containers they used. We agree that Hammon was not shown to be qualified as an expert on the subject of containers for nitric acid, and in view of the nature of the testimony he gave, we cannot believe that the jury accepted him as an expert. In its ultimate form, his testimony did not amount to the giving of an expert's opinion but merely was a statement of what he had seen in some hospitals in times past, with respect to nitric acid containers. The same statement could have been made by a layman. The evidence was relevant in the application of the test hereinbefore stated in that it tended to show that protective containers were *available* and that breakage was a recognized risk. These facts reasonably were to be inferred from the other evidence in the case, so even if it be considered that it was error to admit Hammon's testimony the error was not prejudicial.

■ As concerns the issue of practicality and economic feasibility we conceive that the burden was on the appellant to show that there were no practical and economically feasible methods to insure safety. See C. D. Herme, Inc. v. R. C. Tway Co., Ky., 294 S.W.2d 534.

■ The appellant complains of error in the instructions in that they placed upon the appellant the duty to furnish a safe

place, to work in addition to the duty to furnish acid in a reasonably safe container. The complaint is that there was no proof of failure to furnish a safe place. The difficulty with this complaint is that the appellant itself *offered* a safe-place instruction, and the only objection it made on the trial to the instruction given by the court was that there should have been no instruction as to unsafeness of the container.

 The appellant's final claim of error is that there was no basis in the evidence for the court's instruction which authorized the jury to award damages for future impairment of earning power. (Appropriate objection to the instruction was made below.) In this claim we find merit. The evidence of permanent injury was only that the areas on Mrs. Mulkin's legs which had been burned would turn purple and become sensitive when exposed to the cold. There was no suggestion of how this possibly could or would affect her power to earn money. It is true that this court has sustained an award for loss of earning capacity based on *facial* scars or disfigurement. See Clover Fork Coal Company v. Daniels, Ky., 340 S.W.2d 210. But that was on the basis that such injuries might reasonably be expected to impair employability. The same is not true of mere occasional discoloration of lower leg areas. The appellee refers to cases holding that it is not necessary to prove that a permanently injured plaintiff actually had any previous experience of earning. However, those cases are not authority for the proposition that the injury need not be of a character reasonably calculated to have some effect on earning capacity.

 The verdict was for the lump sum of $5,853, with no indication of what portion of it was for pain and suffering and what portion, if any, was for loss of earning power. We cannot say that the error in the instructions, in authorizing recovery for loss of earning power, was not prejudicial. Therefore the judgment must be reversed.

 Since we find no error in regard to the determination of *liability* and since there are no indications of any prejudicial influences that might have affected that determination, we are remanding the case for a retrial only on the question of damages.

The judgment is reversed with directions for further proceedings in conformity with this opinion.

All concur.