## Coca-Cola Bottling Works v. Shelton, By, etc.

(Decided April 20, 1926.)

### Appeal from Todd Circuit Court

1. Negligence—-Manufacturer, Concealing Defects or Representing Article as Safe, is Liable for Injuries to Ultimate Consumer.— Though generally a manufacturer or seller of a defective article is not liable for injuries to an ultimate consumer purchasing from a middleman, manufacturer is nevertheless liable where he knows the article is unsafe and dangerous, due to defects in its construction or material, and either conceals defects or represents the article as safe and sound.

2. Negligence—Manufacturer of Inherently Dangerous Article is Liable to Ultimate Consumer for Injury from Negligence in Manufacturing, Packing, or Marketing Article Without Due Warning.— Though generally a manufacturer of a defective article is not liable for injuries to ultimate consumer who purchases from middleman, where the article manufactured is inherently dangerous or intrinsically dangerous to life and limb, the manufacturer is liable to the ultimate consumer for injuries resulting from his negligence in manufacturing, packing, or putting upon the market such articles without due warning.

3. Negligence—Explosion of Coca-Cola Bottles Held to Authorize Inference they were Improperly Charged and Imminently Dangerous when Delivered by Manufacturer.—Where 27 Coca-Cola bottles were shown to have exploded under a variety of circumstances on

particular day and place, it may be inferred therefrom that they were defective or were improperly charged, which were matters exclusively under the control of the defendant manufacturer and presumably within its knowledge, and that, when delivered, their condition was such as to render them imminently if not intrinsically dangerous.

4. Negligence—Plaintiff, Injured by Explosion of Coca-Cola Bottles, Held Not Guilty of Contributory Negligence Per Se in Placing Bottles in Iced Water.—Plaintiff, injured by explosion of Coca-Cola bottles, held not guilty of contributory negligence per se, depriving her of action against manufacturer, by placing the bottles in iced water, even though some were poured into tank from case.

5. Negligence—Manufacturer is Liable to Ultimate Consumer for Injury from Article Becoming Inherently Dangerous by Customary Use, Unless User in Warned of Danger.—Though generally a manufacturer or seller of defective article is not liable for injuries to ultimate consumer, who has purchased from middleman, yet, where the article, though not inherently dangerous in itself, becomes so by the usual and customary manner of its use in carrying out the purpose for which it was intended, unless the user knows or is warned of such danger, the manufacturer is liable for such injuries.

6. Negligence—Instruction Held to Protect Rights of Manufacturer of Exploding Coca-Cola Bottles Causing Injury.—In an action against manufacturer for injuries sustained when coca-cola bottles exploded, instruction to jury to find for the defendant, if any person other than defendant and its employes were negligent and by such negligence contributed or helped to bring about or cause the injury, held to protect fully defendant's rights.

EVERETT S. PENICK for appellant.

PETRIE & STANDARD for appellee.

OPINION OF THE COURT BY JUDGE M cCANDLESS— Affirming.

While Miss Alice Shelton, an infant, was engaged in cooling bottles of soft drinks in a tank of ice water, a coca-cola bottle exploded, its jagged edges striking her on the wrist and severing the extensor tendons of the four fingers of her right hand, practically destroying their usefulness.

In a suit by her next friend against the Coco-Cola Bottling Works she recovered a judgment for $1,250.00. Defendant appeals and insists that the court erred in not directing a verdict in its favor.

The injury occurred about one o'clock in the afternoon of June 7, 1924, on the occasion of the dedication of

the Jefferson Davis Monument in Fairview, Ky. The day was warm and a large crowd was in attendance, there being a great demand for soft drinks which were on sale at the local stores and at improvised stands on the grounds. The injury occurred at one of these. It was provided with a tank of cold water about twelve inches deep, in which the bottles were cooled before selling; some of these were emptied into the tank by tilting the case while others were placed into it by hand, it appearing that the latter method was being followed at the time of the explosion, there being a simultaneous explosion of three bottles; also there is a slight conflict as to whether the cases containing the bottled goods had been exposed to the rays of the sun, and the bottles heated before the attempt was made to cool them, the weight of the evidence being to the effect that those that exploded had been stacked in the shade. There were twenty-seven explosions of coco-cola bottles during the day at the various places of sale named above. Some of these occurred while the bottles were being handled, others while in the cooling boxes, and still others while in the cases at the place of delivery, without being handled or touched by the dealer or consumer. In each instance the article was furnished and delivered by appellant, a corporation, operating a number of bottling establishments, the goods for this occasion having been manufactured at its Russellville plant. This was a small plant that had been running only a short time, and was being worked overtime to fill the order. It is shown, however, to have been equipped with improved machinery, and to have been operated by fairly experienced men, who testify that the bottles for this occasion were properly inspected in an electrically equipped contrivance and found to be free from defects; that they were manufactured to withstand a pressure of from 90 to 110 pounds per square inch; that the bottling machine is equipped with a standard gauge, which automatically controls the pressure and holds it at the figure set by the operator; that the pressure in the bottle is approximately one-third of that exerted by the machine which was set at 60 pounds during the entire time this shipment was being bottled, making pressure in the bottles around 20 pounds, or less than one-fourth of their strength; that it is impractical to operate the machine at a higher pressure than sixty pounds, as the crowns with which the bottles are capped will not hold at a higher pressure.

In the recent case of Ky. Independent Oil Co. v. Schnitzler, 208 Ky. 507, 39 A. L. R. 979, 250 S. W. 570, the rule of liability in cases of this character is thus stated:

"It is of course the general rule that a manufacturer or seller of a defective article is not liable for injuries to the person of an ultimate consumer who has purchased from such middleman. See Peaslee-Gaulbert v. McMath, 148 Ky. 265, 39 L. R. A. (N. S.) 465. But to this general rule there are exceptions. Among them is where the manufacturer knows the article he has made, and which is not inherently or intrinsically dangerous to health or life, is nevertheless unsafe and dangerous due to defects in its construction or material, and either conceals the defects or represents the article as safe and sound, in which state of case he is liable to the ultimate consumer who may be injured due to such defect. Olds Motor Works v. Shaffer, 145 Ky. 616. The theory underlying liability in this class of cases seems to rest upon the idea of false representations in the nature of deceit, and hence, when the middleman knows the article is unsafe or dangerous, and then resells it, the ultimate consumer cannot recover from the manufacturer, since the basis of liability, i. e., deceit, is lacking. Olds Motor Works v. Shaffer, supra.

"Another exception to the general rule of non-liability is where the article manufactured is inherently dangerous or intrinsically dangerous to life and limb, and in this class of cases the manufacturer is liable to the ultimate consumer for injuries which result from the manufacturer's negligence in manufacturing or packing or putting upon the market without due warning, such article. The liability here does not arise out of contract or deceit, but is based upon the fundamental proposition that where a person sustains such relations to society that danger to others will result from a failure to use due care in his activities, he owes the legal duty of such care to that class of persons likely to be injured by his failure to exercise it. One who puts on the market articles inherently or intrinsically dangerous to life owes the duty of care to all those persons who ought reasonably to have been foreseen as likely to use them."

Ordinarily coca-cola is considered a harmless beverage, and not inherently dangerous, but on this occasion numerous (27) bottles exploded under a variety of circumstances, some of them while in the cases without ever being handled or touched by the dealer. From these facts it may be inferred that they were defective or were improperly charged, matters exclusively under the control of defendant and presumably within its knowledge, and that when delivered their condition was such as to render them imminently if not intrinsically dangerous. It is true that in Stone v. Van Noy News Company, 153 Ky. 240, we held that the explosion of a single bottle of soda pop was not alone sufficient to show negligence in bottling, but it was strongly intimated that the rule would be otherwise if numerous explosions were shown, and this is in line with the current of authority. See Case Anno. in A. L. R. (N. S.), vol. 4, page 1094; vol. 8, page 500; vol. 17, page 672; vol. 39, page 1006. Some authorities going to the extent of holding that the rule of *res ipsa loquitur* applies to the explosion of a single bottle, if negligence is negatived upon the part of every one handling it after it left the hands of the bottler. Payne v. Rome Coca-Cola Bottling Works, 10 Ga. App. 762; Stolle v. Annheuser-Bush, 307 Mo. 520, 271 S. W. 497, 39 A. L. R. 1001.

It is argued that the injurious explosion was caused, not by the nature of the article, but by the warm bottles being suddenly immersed in iced water, thus causing a contraction of the bottle and a corresponding increase in pressure, or by concussion in pouring the bottles into the tank from the case, either of which would be contributory negligence *per se,* and relieve it from liability. We can not agree to this. In principle and by analogy the second exception quoted, *supra,* to the rule of nonliability should apply to the manufacture and sale of an article not inherently dangerous in itself, but which becomes so by the usual and customary manner of its use in carrying out the purpose for which it is intended, unless the user knows or is warned of such danger. Carbonated beverages are mostly consumed in warm weather, and to be palatable they must be cold. Bottled goods are invariably chilled before the bottle is opened. If the safety of this process depends upon the prevailing temperature, rendering it unsafe in warm weather to place the bottle in a refrigerator or to expose it to the outer air after being chilled, stronger bottles should be used or less

pressure exerted or at least the public should be warned of the danger. Hence it cannot be said that plaintiff was guilty of contributory negligence *per se* in placing the bottles in the iced water, even though some of them had been poured into the tank from the case, and as the court instructed the jury to find for the defendant if any person other than the defendant and its employes were negligent and by such negligence contributed to or helped to bring about or cause the injury, the defendant's rights were fully protected. While there is some criticism of the instructions we think they fairly conform to the rules above expressed.

Wherefore, perceiving no error, the judgment is affirmed.