**Clyde E. ROWE, Appellant,**

v.

**OSCAR EWING DISTRIBUTING CO., Inc.,
et al., Appellees.**

Court of Appeals of Kentucky.

June 1, 1962.

Hatcher & Lewis, Elizabethtown, for appellant.

H. L. James, Elizabethtown, for appellees.

MOREMEN, Judge.

In appellant's action against appellee company for personal injuries, the court directed a verdict for the appellees.

Appellant, Clyde E. Rowe, is a member of the Army of the United States stationed at Fort Knox. He lives in a house trailer near the military reservation.

Appellee, Oscar Ewing Distributing Co., Inc., is a milk company engaged in selling milk and other products in the area in which appellant lives. Appellee, Julian Cox, delivers milk.

In the early morning of April 25, 1959, appellant and his wife were seated at the breakfast table when Cox came to the door of their trailer and received an order for two half-gallons of sweet milk and some other products. He returned to the milk truck and obtained these products. He set the two half-gallons of sweet milk on the floor inside the door of the trailer. He and the Rowes talked for a few minutes and Cox left. Appellant testified that shortly thereafter he reached down and grabbed the two bottles by the top portion, one in each hand, and as he lifted the bottles and started to turn to go to the refrigerator the bottle in his right hand collapsed. A piece of glass cut his right hand at the juncture of the right thumb and the palm. It was a serious injury and the proof indicated that he will have a permanent disability in his right hand.

Appellant testified that he did not hit the bottle against any other object but that the neck of the bottle cracked. He said the bottle was shattered. He was not sure whether this happened when the bottle hit the floor. The broken glass was swept up and disposed with the garbage and therefore was not produced in evidence. This, in itself, makes it a little harder for all of us to reach a decision. The fragments of the broken bottle may have helped experts to guide us, as it did in some cases.

Appellees produced several witnesses, including the general manager of the milk distributing company at the time, who described in detail the methods used by the company in inspecting and filling the bottles which, he testified, were approved and accepted forms of operation in the dairy business. It was modern. He stated that it is the duty of the operator of the bottle washer to check for visible cracks and to see that the bottles are clean before they go to the filler operator. All of this was done. The filler operator is under duty to inspect the bottles for specks or spots or any defects that may be in the bottles. He described the filling operation as follows:

"A. The bottle comes out of the washer after it's gone through the washer and they are set up on conveyor lines and they go into the filler line operation from the bottle washing room and they come through the bottle filler and the filler has a valve that goes down into the bottle. It's seated on top with a rubber seal and as they go around the circle they are under vacuum, air vacuum, in case there is any leak or crack in the bottle the bottle will not fill. Then it goes from that machine off the conveyor about 18 or 20 inches and the inner lid is put on. When it comes off that machine it goes through the next machine which is the seal-on machine and the lids are heated with an electric unit so it will seal the bottle as it comes off the conveyor, it has little rollers."

And in more detail as follows:

"A. The filler has some pressure on it as they come in on the pedestal and they raise up against this valve and as it presses the valve to let the milk out into the bottle it pulls the air out of the bottle. When it comes up it depresses this spring and if it has anything too much wrong with the bottle the bottle will collapse at that time or if it doesn't collapse or has any crack or leak the filler will pull air instead of milk and the bottle doesn't fill and the purpose is to keep from wasting the milk."

The general manager described the post-bottling procedures of capping the bottles and placing them in containers of wire or wood which were divided into sections, one bottle per section. He testified that the bottles fit snugly and do not bump together while being transported in either kind of container. In this instance, wire containers were used. The testimony of Julian Cox, the deliveryman and other appellee, substantiated the general manager's testimony as to the containers. Cox further testified that he always carried the bottles from his truck to the customers' houses by hand, grasping them around the neck. He said the bottles were all right when he delivered them. This was the same manner in which

appellant had picked up the bottle when it collapsed.

Appellant contends that the milk company violated its duty to supply milk to its customers in safe containers and was negligent in the bottling and handling of the product. There was no showing of specific negligence on the part of the milk company but it is insisted that recovery could be had under the doctrine of res ipsa loquitur. In addition appellant relies upon Sec. 395 of the American Law Institute's Restatement of the Law of Torts which indicates that liability attaches to manufacturers who fail to exercise reasonable care in the manufacture of chattels which, unless carefully made, foreseeably may involve unreasonable risks of bodily harm; and upon some opinions of this court and of courts from other jurisdictions. We will discuss first the opinions of this court relied upon by appellant.

In Seale v. Coca-Cola Bottling Works, 297 Ky. 450, 179 S.W.2d 598, the consumer sought damages for injuries suffered as the result of drinking some of the contents of a bottle of Coca-Cola which contained slivers of glass. It is noted that the suit was based upon the product manufactured by the Coca-Cola Company, not the bottle, and involved a question of contamination of that product. The opinion stated that the container was "whole, sound and unbroken."

In the instant case the containers used by the milk company were not manufactured by it but were purchased from a glass bottle manufacturer. It was not shown by appellant that he purchased the bottle. He did purchase the milk in the bottle. We believe it fair to assume that the bottle was lent to appellant as an incidental service in connection with the purchase of the milk. The product which the milk company processes is milk which is generally considered to be a harmless substance unless contaminated and there is no contention here that this milk was contaminated.

Coca-Cola Bottling Works v. Curtis, 302 Ky. 199, 194 S.W.2d 375, is a case of a "bee being where it should not be, that is

in the bottle of Coca-Cola," also a contamination case.

Other cases cited by appellant offer a closer analogy, but we do not believe they are decisive.

In Gordon v. Nehi Beverage Co., 298 Ky. 836, 183 S.W.2d 795, a soft drink bottle exploded in plaintiff's hand, but there the plaintiff did not rest his case entirely upon the doctrine of res ipsa loquitur, as was done in the case at bar. He introduced fragments of the bottle itself and it was shown that the bottle was defective in that the glass on the various surfaces was of unequal thickness. One of the beverage company's officers testified that a bottle varying in thickness was defective and would be more likely to explode under pressure from the carbonic gases contained in the beverage. So it was not an unreasonable deduction from the evidence that the beverage company had been negligent in its inspection of the bottle.

In Coca-Cola Bottling Works v. Shelton, 214 Ky. 118, 282 S.W. 778, plaintiff produced evidence that on the same afternoon on which the bottle in question exploded, twenty-five other Coca-Cola bottles exploded. This court held that by reason of the numerous explosions under similar circumstances "it may be inferred that they were defective or were improperly charged."

In Loche v. Confair, 372 Pa. 212, 93 A.2d 451, it was pointed out:

"What is perhaps somewhat of a tenuous distinction has been made between the doctrine of res ipsa loquitur and the exclusive control doctrine, which latter is more or less peculiar to Pennsylvania law in accident cases." We require exclusive control to be an element in the application of res ipsa loquitur, but it seems that even another theory has been developed in Pennsylvania which does not require our discussion.

In Carter v. Yardley & Co., Ltd., 319 Mass. 92, 64 N.E.2d 693, 164 A.L.R. 559, the court was primarily concerned as to

whether the plaintiff was to be denied relief in a tort action merely because she had no contractual relation or privity of contract with the defendant. Since we have in a recent case (C. D. Herme, Inc., v. R. C. Tway Co., Ky., 294 S.W.2d 534) laid to rest the privity requirement for a manufacturer's liability, the case is of little value.

The per curiam opinion in Hoenig v. Central Stamping Co., 247 App.Div. 895, 287 N.Y.S. 118, did not undertake a discussion of any of the questions we have here and simply indicated that a manufacturer of a coffee urn would be liable to an ultimate customer where the handle on the urn broke in normal use and the plaintiff was burned.

 We are not convinced that any of the cases cited by appellant support his theory that the doctrine of res ipsa loquitur is sufficient to take a case to the jury after the defendant has shown that he has exercised reasonable care in his methods of processing and inspecting a product during the course of manufacture.

In Cox v. Wilson, Ky., 267 S.W.2d 83, 44 A.L.R.2d 830, the court said:

"The fact that some mystery accompanies an accident does not justify the application of the doctrine of res ipsa loquitur. The fact that we cannot pinpoint an act of omission or commission wherein one fails to respect the rights of others does not summon its use. A lack of knowledge as to the cause of the accident does not call for the application of the doctrine. The separate circumstances of each case must be considered and from them it must be first decided whether according to common knowledge and experience of mankind, this accident could not have happened if there had not been negligence."

In Locbig's Guardian v. Coca-Cola Bottling Co., 259 Ky. 124, 81 S.W.2d 910, we affirmed the judgment of a circuit court rendered pursuant to a directed verdict given at the close of plaintiff's testimony in a case where a bottle of Coca-Cola exploded, causing injury. It was said:

"The doctrine of res ipsa loquitur assumes, at least prima facie, the existence of negligence from the mere occurrence and injury. Since the principle applies only to cases where the existence of negligence is a more reasonable deduction from the circumstances, it should not be allowed to prevail where, on proof of the occurrence, without more, the matter still rests in conjecture alone."

In the case under submission the bottle was not preserved or presented at the trial. Appellee proved beyond doubt that its method of inspection of the bottles and of the processing of the milk was efficient and thorough. Cox, the deliveryman, testified that he carried the bottles by their tops when he delivered them to the trailer and that they were in sound condition. Just how this accident happened is still a matter of speculation and conjecture and we are of the opinion that the circuit court properly directed the verdict for the appellee.

 Appellant next contends that under KRS 361.150 of the Uniform Sales Act in effect at the time of the accident, damages are recoverable for breach of warranty including personal injuries and recovery may be had for a breach of an implied warranty of fitness. Subsections (1) and (2) of the said section read:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose.

"(2) Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality."

In connection with that Act we direct attention to subsection (2) of KRS 361.010, which reads:

"A sale of goods is an agreement whereby the seller transfers the property in goods to the buyer for a consideration called the price."

Appellant relies upon Snead v. Waite, 306 Ky. 587, 208 S.W.2d 749, to support his theory that a breach of implied warranty permits recovery for personal injury. In that case plaintiff purchased from defendant a quantity of barbecued mutton and consumed it. He became violently ill and produced medical testimony that his illness apparently resulted from food poisoning This court refused to disturb the judgment based on the theory that the seller of the mutton had breached an implied warranty of fitness. However, the commodity sold was the one actually manufactured or processed by the seller. It was not shown in our case that the milk bottle was the subject of a sale. The commodity sold was milk which carried with it the seller's implied warranty that it was wholesome. But there was no showing that the milk bottle was sold and there was no showing that the bottle had a specific defect which caused the accident and, as we concluded above, one may only conjecture as to what force caused the bottle to collapse. If this suit were against the manufacturer of the bottle and in fact it had been shown that a defective bottle was sold to appellant for a specific purpose, we would be faced with another question. As we understand this case the only possible way that appellant could get his case to the jury would be to say that the doctrine of res ipsa loquitur in itself might take it to the jury even though the defendant had shown by ample proof that the accident happened through no negligence of its own.

In East Kentucky Beverage Co. v. Day, Ky., 248 S.W.2d 923, we said that in certain cases the doctrine of res ipsa loquitur does apply and places the burden upon the defendant to justify his action. The court said:

"But, as it was stated in the case of Batson v. Western Union Telegraph Co., 5 Cir., 75 F.2d 154, 157, the doctrine of res ipsa loquitur applies 'only when the thing shown speaks of the negligence of the defendant, not merely of the occurrence of an accident.' "

Perhaps the fact that the bottle broke was sufficient in this case to place upon the appellees the duty to show that they had carefully handled the bottle during the time it was under their control. The proof introduced in appellees' behalf was sufficient to meet that requirement.

We are of opinion that the court properly directed the verdict for appellee.

Judgment affirmed.

PALMORE, J., dissenting.