Janice EMBS, Appellant,

v.

**PEPSI–COLA BOTTLING COMPANY OF LEXINGTON, KENTUCKY, INC., a Kentucky Corporation, et al., Appellees.**

Court of Appeals of Kentucky.

May 23, 1975.

Rehearing Denied Sept. 19, 1975.

Charles T. Walters, Winchester, for appellant.

Leslie W. Morris, II, Stoll, Keenon & Park, Lexington, for appellees Pepsi-Cola Bottling Co. of Lexington, Kentucky, Inc. and Pepsi-Cola Bottling Co. of Winchester.

Janet R. White, Winchester, for appellee Stamper's Cash Market, Inc.

Ben L. Kessinger, Jr., Harbison, Kessinger, Lisle & Bush, Lexington, for appellee Arnold Lee Vice.

LUKOWSKY, Justice.

This is an appeal from a judgment entered by the Clark Circuit Court dismissing the claim of plaintiff-appellant pursuant to a directed verdict granted at the completion of her proof. We reverse and remand.

On the afternoon of July 25, 1970 plaintiff-appellant entered the self-service retail store operated by the defendant-appellee, Stamper's Cash Market, Inc., for the purpose of "buying soft drinks for the kids." She went to an upright soft drink cooler, removed five bottles and placed them in a carton. Unnoticed by her, a carton of Seven-Up was sitting on the floor at the edge of the produce counter about one foot from where she was standing. As she turned away from the cooler she heard an explosion that sounded "like a shotgun." When she looked down she saw a gash in her leg, pop on her leg, green pieces of a bottle on the floor and the Seven-Up carton in the midst of the debris. She did not kick or otherwise come into contact with the carton of Seven-Up prior to the explosion. Her son, who was with her, recognized the green pieces of glass as part of a Seven-Up bottle.

She was immediately taken to the hospital by Mrs. Stamper, a managing agent of the store. Mrs. Stamper told her that a Seven-Up bottle had exploded and that several bottles had exploded that week. Before leaving the store Mrs. Stamper instructed one of her children to clean up the mess. Apparently, all of the physical evidence went out with the trash. The location of the Seven-Up carton immediately before the explosion was not a place where such items were ordinarily kept.

The defendant-appellee, Arnold Lee Vice, was the distributor of Seven-Up in the Clark County area. As such, he supplied Stamper's Cash Market, Inc. with its entire stock of Seven-Up. He would deliver it with his truck to the store and place it in the store and the cooler. Employees of the store would also place Seven-Up in the cooler from other locations in the store. His truck was loaded with Seven-Up by the bottler at the plant.

The defendant-appellee, Pepsi-Cola Bottling Co. of Lexington, Kentucky, Inc., was the bottler who produced and supplied Vice with his entire stock of Seven-Up.

The foregoing narrative is a fair summary of the evidence introduced by the plaintiff-appellant in support of her claim for bodily injury. When she rested her case, the defendants-appellees moved for a directed verdict in their favor. The trial court granted the motion on the grounds that the doctrine of strict product liability in tort does not extend beyond users and consumers and that the evidence was insufficient to permit an inference by a reasonably prudent man that the bottle was defective or if it was, when it became so.

In Dealers Transport Co. v. Battery Distributing Co., Ky., 402 S.W.2d 441 (1966) we adopted the view of strict product liability in tort expressed in Section 402 A of the American Law Institute's Restatement of Torts 2d.

"402 A. Special Liability of Seller of Product for Physical Harm to User or Consumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it was sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

■ Comment f on that section makes it abundantly clear that this rule applies to any person engaged in the business of supplying products for use or consumption, including any manufacturer of such a product and any wholesale or retail dealer or distributor.

Comment c points out that on whatever theory, the justification for the rule has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products.

The caveat to the section provides that the Institute expresses no opinion as to whether the rule may not apply to harm to persons other than users or consumers. Comment on caveat o states the Institute expresses neither approval nor disapproval of expansion of the rule to permit recovery by casual bystanders and others who may come in contact with the product, and admits there may be no essential reason why such plaintiffs should not be brought within the scope of protection afforded, other than they do not have the same reasons for expecting such protection as the consumer who buys a marketed product, and that the social pressure which has been largely responsible for the development of the rule has been a consumer's pressure, and there is not the same demand for the protection of casual strangers.

■ The caveat articulates the essential point: Once strict liability is accepted, bystander recovery is *fait accompli*. Strict Products Liability to the Bystander: A Study in Common Law Determinism, 38 Univ. of Chicago L.R. 625, 630. Moreover, with but one exception no jurisdiction which has adopted strict tort liability has rejected the bystanders claim. Id. at 635. That exception is Davidson v. Leadingham, E.D.Ky., 294 F.Supp. 155 (1968). This was a diversity case in which Judge Swinford was required to construe Kentucky law. He cautiously and laudably refrained from extending the rule in the absence of clear indications in our cases of the direction which we would take. Suffice it to say, this is a question of state law and we are not bound by the opinion.

■ Our expressed public policy will be furthered if we minimize the risk of personal injury and property damage by charging the costs of injuries against the manufacturer who can procure liability insurance and distribute its expense among the public as a cost of doing business; and since the risk of harm from defective products exists for mere bystanders and passersby as well as for the purchaser or user, there is no substantial reason for protecting one class of persons and not the other. The same policy requires us to maximize protection for the injured third party and promote the public interest in discouraging the marketing of products having defects that are a menace to the public by imposing strict liability upon retailers and wholesalers in the distributive chain responsible for marketing the defective product which injures the bystander. The imposition of strict liability places no unreasonable burden upon sellers because they can adjust the cost of insurance protection among themselves in the course of their continuing business relationship. Anno.: Products Liability: Extension of Strict Liability in Tort to Permit Recovery by a Third Person who is Neither

a Purchaser Nor User of Product, 33 A.L. R.3d 415, 417.

We must not shirk from extending the rule to the manufacturer for fear that the retailer or middleman will be impaled on the sword of liability without regard to fault. Their liability was already established under Section 402 A of the Restatement of Torts 2d. As a matter of public policy the retailer or middleman as well as the manufacturer should be liable since the loss for injuries resulting from defective products should be placed on those members of the marketing chain best able to pay the loss, who can then distribute such risk among themselves by means of insurance and indemnity agreements. Caruth v. Mariani, 11 Ariz.App. 188, 463 P.2d 83 (1970). Any inclination to relieve the retailer must have in mind the little corner grocery store but in these days the dealer is more likely to be Safeway Stores or some other nationwide enterprise which is the prime mover in marketing the goods and the manufacturer only a small concern which feeds it to order. Prosser, The Fall of the Citadel, 50 Minn. L.R. 791, 816.

The result which we reach does not give the bystander a "free ride." When products and consumers are considered in the aggregate, bystanders, as a class, purchase most of the same products to which they are exposed as bystanders. Thus, as a class, they indirectly subsidize the liability of the manufacturer, middleman and retailer and in this sense do pay for the insurance policy tied to the product.

Public policy is adequately served if parameters are placed upon the extension of the rule so that it is limited to bystanders whose injury from the defect is reasonably foreseeable. Elmore v. American Motors Corp., 70 Cal.2d 578, 75 Cal.Rptr. 652, 451 P.2d 84 (1969).

For the sake of clarity we restate the extension of the rule. The protections of Section 402 A of the Restatement of Torts 2d extend to bystanders whose injury from the defective product is reasonably foreseeable.

In the administration of the law we must be satisfied with proof which leads to a conclusion with reasonable probability where absolute logical certainty is not possible. We may be constrained to act upon indecisive evidence where complete proof is impossible. Then the logical, probative force of the evidence produced is measured in part by the test of whether it is the best evidence available. Foltis, Inc. v. City of New York, 287 N.Y. 108, 38 N.E.2d 455. The law does not require an injured plaintiff to go about picking up pieces of an exploded bottle while her leg bleeds profusely or the submission of these pieces, which are not obtainable because they have been discarded by the retailer, to an appropriate agency for the purpose of making a scientific inspection and determination as to defects.

It matters not that the evidence be circumstantial for as Thoreau put it "Some circumstantial evidence is very strong, as when you find a trout in the milk." There are some accidents, as where a beverage bottle explodes in the course of normal handling, as to which there is common experience that they do not ordinarily occur without a defect; and this permits the inference of a defect. Prosser on Torts, 4th Ed., 673. This is particularly true when there is evidence in the case of the antecedent explosion of other bottles of the same product. Coca-Cola Bottling Works v. Shelton, 214 Ky. 118, 282 S.W. 778 (1926).

In cases involving multiple defendants the better reasoned view places the onus of tracing the defect on the shoulders of the dealers and the manufacturer as a policy matter, seeking to compensate the plaintiff and to require the defendants to fight out the question of responsibility among themselves. Prosser, The Fall of the Citadel, supra, at 847.

The motions for a directed verdict should have been denied and the defendants-appel-

lees should have been required to come forward with their evidence.

The judgment is reversed and the cause is remanded to the Clark Circuit Court for further proceedings consistent herewith.

All concur except STEPHENSON, J., who dissents.

STEPHENSON, Justice (dissenting).

I respectfully dissent from the majority opinion to the extent that it subjects the seller to liability. Every rule of law in my mind should have a rational basis. I see none here.

Liability of the seller to the user, or consumer, is based upon warranty. Restatement, Second, Torts § 402 A. To extend this liability to injuries suffered by a bystander is to depart from any reasonable basis and impose liability by judicial fiat upon an otherwise innocent defendant. I do not believe that the expression in the majority opinion which justifies this rule for the reason that the seller may procure liability insurance protection is a valid legal basis for imposing liability without fault.

I respectfully dissent.