978 F.2d 1258
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James Edward COMPTON, Plaintiff-Appellant,
v.
Mae OWENBY, Superintendent of Blount County Schools, Defendant,
and
The Blount County Board of Education, Defendant-Appellee.
 No. 91-6406.
 United States Court of Appeals, Sixth Circuit.
 Oct. 28, 1992.
 
 Before KEITH, DAVID A. NELSON and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is a civil rights action brought against a school board by a male teacher who wanted to be promoted to a principalship. The plaintiff had no prior experience as a principal. Instead of appointing him to the position, the board appointed a female who had eight years' prior experience as a principal, plus more as a teacher.
 
 
 2
 The plaintiff was a politically active Democrat. His sole claim is that the defendant board (comprised entirely of Republicans) discriminated against him on the basis of his politics, in violation of his rights under the United States Constitution and Tennessee law.
 
 
 3
 The case was tried without a jury, and the district court (Jarvis, J.) entered judgment in favor of the defendant board. The judgment was supported by written findings of fact and conclusions of law. The district court's findings were not clearly erroneous, in our view, and we shall affirm the judgment.
 
 
 4
 * The plaintiff, James Edward Compton, was hired in 1975 by the school system of Blount County, Tennessee, for a teaching position at the Fairview Elementary School. Mr. Compton has taught there ever since. He has never served anywhere as a principal.
 
 
 5
 The principal's position at Fairview became vacant in the spring of 1989, and Mr. Compton applied for the job. Six other people applied too.
 
 
 6
 The application process consisted of filling out an application and a credentials form and being interviewed by a four-person committee headed by the Blount County Superintendent of Schools. The superintendent was Mrs. Mae Owenby, a Democrat. Plaintiff Compton had been the secretary of Mrs. Owenby's campaign organization when she ran for election to the superintendent's post.
 
 
 7
 The interview committee had a standardized form designed for use in evaluating applicants' qualifications. In practice, the form was not used in the intended manner. The United States Department of Education's Office of Civil Rights ("OCR") had previously found the Blount County schools in violation of Title IX of the Education Amendments of 1972 because of the system's poor record in appointing women to administrative posts. (OCR believed that the school system weighed past administrative service too heavily in filling administrative posts; because women had not held such posts historically, they were penalized when applying for administrative openings.) Mrs. Owenby understood OCR to have directed that Blount County consider only relevant nonadministrative experience when filling administrative positions; this understanding was not supported, however, by any written directive from OCR.
 
 
 8
 Although the OCR-approved credentials form provided on its face that up to 20 points could be accumulated for combined teaching and administrative experience, Mrs. Owenby capped the experience category at 10 points. This was the maximum number of points allowable for teaching experience. As a practical matter, therefore, administrative experience was not considered at all.
 
 
 9
 Each applicant's score on the application form was averaged with his or her score on the interview, and the averages were then ranked to determine the top scorer. Under Mrs. Owenby's calculations, the top scorer in the competition for the Fairview principalship was plaintiff Compton, who had 153.5 points. The runner-up, with 152.0 points, was a woman named Gaye Carol Guinter.
 
 
 10
 Mrs. Guinter had been the principal at another school for eight years. She had extensive teaching experience as well. The rating system, as modified by Superintendent Owenby, gave Mrs. Guinter no credit at all for her prior experience as a principal.
 
 
 11
 Mrs. Owenby recommended that the school board appoint the top scorer--Mr. Compton--to be principal of the Fairview school. If Mrs. Guinter's administrative experience had been counted, she would have been the top scorer.
 
 
 12
 By a vote of 4 to 3, the board rejected Mrs. Owenby's recommendation of Mr. Compton and appointed Mrs. Guinter instead. All of the board members who voted against Mr. Compton testified at trial that they did so because of a conviction that he was not as well qualified as Mrs. Guinter.
 
 
 13
 The evidence presented by Mr. Compton showed that of 25 appointments made since OCR's finding of discrimination against women, eight of the appointees (32 percent) had more experience relevant to the position than any other applicant; nine appointees (36 percent) had less experience than some other applicants; and eight appointees (32 percent) had no relevant experience at all. Voting records of 18 administrators appointed since 1984 allegedly demonstrated that each was a Republican.
 
 
 14
 Also received in evidence was a local newspaper article published the day Mr. Compton's nomination was voted down. The article reported that the chairman of the Blount County Republican Party, one Art Swann, had issued a statement accusing Mrs. Owenby of nominating the less-experienced Mr. Compton because he was a political ally.
 
 
 15
 In entering judgment for the school board the district court found, among other things, that "the test scores developed by the interview committee were very subjective and irrational;" that because of Mr. Compton's lack of administrative experience, the board members who voted against him had a legitimate reason for doing so; and that Mr. Compton's party affiliation and political activity had not influenced the board's action. Acknowledging that Mrs. Owenby's previous recommendations to the board had all been accepted, the court found that it was impossible to determine whether the majority of the earlier appointees were Republicans or Democrats. The court also concluded that the probative value of the statistical data presented by Mr. Compton was not such as to compel a decision in his favor.
 
 II
 
 16
 In actions tried on the facts without a jury, Rule 52(a), Fed.R.Civ.P., provides that the district court's "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." As we stated in Kasuri v. St. Elizabeth Hosp. Medical Center, 897 F.2d 845, 848 (6th Cir.1990), "[w]e must review the district court's decision with great deference and may only reverse if we find clear error." Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been committed. Scales v. J.C. Bradford and Co., 925 F.2d 901, 907 (6th Cir.1991).
 
 
 17
 It is not necessary that the district court make findings of fact on every contention raised at trial. Deal v. Cincinnati Board of Education, 369 F.2d 55, 63-64 (6th Cir.1966), cert. denied, 389 U.S. 847 (1967). "If, from the facts found, other facts may be inferred which will support the judgment, such inferences should be deemed to have been drawn by the District Court." Grover Hill Grain Co. v. Baughman-Oster, Inc., 728 F.2d 784 (6th Cir.1984).
 
 
 18
 The district court's findings and conclusions in the case at bar made no reference to the Art Swann article. Each of the seven board members voting on the Compton nomination testified, however, that the article had no influence on his or her vote. In light of the record as a whole, and giving "due regard," as required by Rule 52(a), "to the opportunity of the trial court to judge of the credibility of the witnesses," we deem the trial court to have inferred that the school board was not simply dancing to Mr. Swann's tune.
 
 
 19
 Mr. Compton says that the Fairview interviews were attended by three board members who had never attended such interviews before. He interprets this as evidence that the Fairview selection was treated differently because a Democrat was in the running. Mrs. Owenby testified that she could not recall any board member sitting in on an interview when principalships were being filled previously.
 
 
 20
 Board-member McCarter cited complaints from the community as the reason for her attendance at the Fairview interviews. Member Milsaps, who came on the Board only in 1988, testified that he attended the Fairview interviews because he was available and had knowledge that they were being conducted. Member Porter, also elected in 1988, apparently attended some of the interviews for another principalship, although his trial testimony contradicted his deposition testimony on the point. The district court might well have drawn inferences favorable to Mr. Compton from some of the testimony, but was certainly not required to do so.
 
 
 21
 Mr. Compton argues that the district court ignored uncontradicted evidence that all of the people whom Mrs. Owenby had successfully nominated for administrative positions in the past were Republicans. When Mrs. Owenby herself testified, however, she was unsure about the political affiliations of any of her nominees: "To tell you the truth I didn't ask and I didn't want to know, I didn't care to know." Our examination of the trial record suggests that most of the appointees in question were Republicans, but the contention that all of them were is not supported by the evidence.
 
 
 22
 As to the statistical evidence concerning the administrative experience of principals appointed from 1984 to 1989, we agree with the district court that the statistics were significantly flawed. Where an applicant with no prior administrative experience won the position, for one thing, the statistics do not reveal whether any other applicant had prior administrative experience. Where the successful applicant had less experience than some of the other applicants, moreover, the statistics do not reveal how broad an experience gap was involved. We do not read the statistical evidence as compelling a decision in Mr. Compton's favor, particularly in view of the fact that OCR was apparently encouraging the school system to promote more women.
 
 
 23
 It is by no means inconceivable that if Mrs. Guinter had been turned down, the board would have been confronted with a suit for sex discrimination. With the board in a "damned-if-you-do-and-damned-if-you-don't" situation, a dispassionate (or cynical) observer might conclude, there was much to be said in favor of filling the Fairview position on the basis of objectively measurable merit. That, of course, is precisely what the trial court found the board did.
 
 
 24
 This case has been exceptionally well briefed and well argued on both sides. We have tried to give careful consideration to all of the arguments, including those not mentioned here. Our review has not left us with a firm conviction that the district court erred. The court's judgment is AFFIRMED.