107 F.3d 12
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Dorothy MAJOR; Marquita Dickison, Plaintiffs,
Robert Meenach, Individually and as Executor of the Estate
of Rita Meenach, deceased, Plaintiff-Appellant,
State Farm Mutual Automobile Insurance, Intervening Plaintiff,
v.
GENERAL MOTORS CORPORATION, Defendant-Appellee.
 No. 96-5153.
 United States Court of Appeals, Sixth Circuit.
 Feb. 3, 1997.
 
 Before: ENGEL, BROWN and COLE, Circuit Judges.
 PER CURIAM.
 
 
 1
 Robert Meenach appeals on various grounds the judgment entered for defendant General Motors Corporation ("GMC") following a jury verdict in defendant's favor in this wrongful death suit.
 
 I.
 
 2
 On April 14, 1992, the plaintiff's wife, Rita Meenach, was driving a 1990 Cadillac Seville owned by Marquita Dickison, her sister. Dickison was in the back seat, and Dorothy Major, Rita Meenach's mother, was in the front passenger seat. Meenach had some sort of seizure and lost consciousness. The car went off the highway. It crossed a ditch, went through an area with many plants and small trees, and knocked down a fence before stopping.
 
 
 3
 Major and Dickison were not seriously injured. Nor was Meenach, but she was still unconscious, or at the very least dazed and confused. Major may or may not have turned off the ignition. Both she and Dickison tried to release Meenach from her seat belt but were unsuccessful. Flames started emanating from the hood of the car, so Major and Dickison stood back. Two men who were quickly on the scene, David McCarty and Kenneth Werst, each tried to release Meenach's seat belt and remove her from the car but could not. Another man, David Humphreys, did not see the seat belt when he tried unsuccessfully to pull Meenach out of the car.
 
 
 4
 Firefighters extinguished the fire about twenty minutes after the accident. Emergency personnel used the "jaws of life" to remove the driver's side door. One of the firefighters thinks he remembers cutting the shoulder part of the seat belt. Meenach eventually got out of the car on her own. She was put on a stretcher because of severe burns. Twenty-seven days later, she died of sepsis, an infection resulting from the burns.
 
 
 5
 Robert Meenach filed this wrongful death suit in state court, based on strict liability, negligence, and breach of implied warranties. GMC removed to federal court on the basis of diversity. During discovery, Meenach filed a motion to compel GMC to answer certain interrogatories more fully. The court denied the motion. The case was tried to a jury in the Eastern District of Kentucky from October 17, 1995, to November 6, 1995.
 
 
 6
 At trial, Meenach theorized that both the seat belt and the fuel system of the 1990 Seville suffered from design defects. Meenach's principal expert witness, O.J. Hahn, testified that the lack of an "inertia switch" to shut off the fuel pump upon a collision allowed gas to keep running towards the hot engine. The plastic fuel feed and return lines, according to Hahn, could easily have been punctured, allowing gas to drip onto the engine or catalytic converter, thereby starting a fire. Furthermore, Hahn continued, the hole in the fire wall to accommodate the steering column was larger than necessary, thus allowing the fire to spread easily. Hahn also theorized that the lap part of the seat belt ratcheted down too tightly during deceleration.
 
 
 7
 GMC's experts contested these theories. According to GMC, the fire started when the bumpy off-road ride caused combustible automobile liquids other than gasoline to flow into the hot engine compartment and ignite. As to the seat belt, GMC's main expert stated that the "ratcheting" theory was impossible. GMC also presented evidence that nothing was wrong with the lap portion of the belt. It showed that Dickison had never had a problem with the buckle release before, that later experiments on the same belt failed to show a problem, and that Rita Meenach was able to get out of the car by herself. It also pointed to portions of the testimony of McCarty, Werst, and Humphreys that cast doubt on whether they had trouble with the belt.
 
 
 8
 At the close of the proofs, the district court rejected Meenach's request to instruct the jury on the breach of implied and express warranties and on the permissibility of inferring a defect. The jury reached a verdict for GMC, on which the court entered judgment. Meenach then moved for judgment as a matter of law under Rule 50(b) or for an amended judgment or a new trial under Rule 59; the district court denied the motion. Alleging error on several grounds, Meenach appeals from the judgment and from the denial of his post-trial motion.
 
 II.
 
 9
 We note at the outset that due to the length of the trial, the chance that any single error by the district court was prejudicial is diminished. See In re Beverly Hills Fire Litigation, 695 F.2d 207, 227 (6th Cir.1982). In a diversity case, the substance of the jury instructions is determined by state law, but federal law governs our review of whether any error in the instructions was prejudicial.[1] Persian Galleries, Inc. v. Transcontinental Ins. Co., 38 F.3d 253, 257 (6th Cir.1994). The standard we use is "whether the charge, taken as a whole, fairly and adequately submits the issues and applicable law to the jury." United States v. Martin, 740 F.2d 1352, 1361 (6th Cir.1984). Our standard of review of the district court's denial of Meenach's post-trial motion is based on Kentucky law. Engebretsen v. Fairchild Aircraft Corp., 21 F.3d 721, 726 (6th Cir.1994). We review the district court's decision de novo, giving GMC the benefit of all inferences and deciding merely whether the jury verdict was so contrary to the evidence as to indicate that it was reached by passion or prejudice. Lewis v. Bledsoe Surface Mining Co., 798 S.W.2d 459, 461-62 (Ky.1990). As to the issues concerning the presentation of evidence, discovery, and argument, we review the district court decision for abuse of discretion. Snyder v. Ag Trucking Co., 57 F.3d 484, 492 (6th Cir.1995) (evidence); Scales v. J.C. Bradford & Co., 925 F.2d 901, 906 (6th Cir.1991) (discovery); United States v. Currie, 609 F.2d 1193, 1194 (6th Cir.1979) (argument).
 
 A. The warranty instruction
 
 10
 Meenach argues that the district court erred in denying proposed instruction # 4, which covered the breach of implied and express warranties. In court, the district judge stated two reasons for not giving the instruction: (1) that Rita Meenach lacked privity with GMC; and (2) that the warranty instruction was subsumed in the other instructions. In its written order denying Meenach's post-trial motion, the court reasserted the privity problem with respect to implied warranties and stated that the request for an instruction on express warranties was untimely.
 
 
 11
 Meenach's complaint alleged a breach of implied warranties but did not allege a breach of express warranties. In the circumstances, the trial court did not abuse its discretion in refusing to grant an instruction on express warranties.
 
 
 12
 As to implied warranties, Meenach argues that under Williams v. Fulmer, 695 S.W.2d 411 (Ky.1985), and Burke Enterprises, Inc. v. Mitchell, 700 S.W.2d 789 (Ky.1985), the district court erred in holding that the warranty instruction was subsumed. While these cases state that "whether a product is defective has different elements under negligence, under strict liability in tort, and under breach of warranty," Williams, 695 S.W.2d at 414; Burke, 700 S.W.2d at 792, they do not address the question of whether an instruction for breach of warranty can be considered subsumed in other instructions. At most, the error, if any, must be considered harmless in view of the jury's specific findings both that GMC was not negligent and that the car was not defective and unreasonably dangerous. In all events, we agree with the district court's conclusion that the proposed instruction was subsumed in the actual instructions.[2]
 
 
 13
 We also agree with the district court that Rita Meenach and GMC lacked privity. Kentucky courts have held that privity exists only between the seller and the first buyer. Williams, 695 S.W.2d at 414. The only evidence in the record about Dickison's car's pedigree is her testimony that the car had been "previously owned." Although the district court based its finding of lack of privity on other grounds, we agree that lack of privity was a proper alternative basis for denying the warranty instruction.
 
 B. The inference instruction
 
 14
 Meenach argues that the district court erred in denying proposed instruction # 3, which read in part, "A defect may be inferred where the evidence shows an accident occurs which in common experience would not normally occur without a defect in a product." The district court rejected this instruction because Kentucky law provides for a rebuttable presumption that a product is not defective if its design and manufacture conformed to the state of the art at the time. Ky.Rev.Stat. § 411.310(2). Meenach does not address the district court's reliance on this Kentucky law. Instead, he argues that the instruction was required under Embs v. Pepsi-Cola Bottling Co., 528 S.W.2d 703 (Ky.1975), which noted that "[t]here are some accidents ... as to which there is common experience that they do not ordinarily occur without a defect; and this permits the inference of a defect." Id. at 706. The facts here were a far cry from those which prompted the Embs court's observation. Embs contains no law on how a jury should be instructed. We find no error in the district court's refusal to lift inapplicable language from an inapplicable case.[3]
 
 C. The discovery issue
 
 15
 During discovery, Meenach asked GMC for information concerning similar accidents. Meenach complains that GMC responded only with respect to 1990 Sevilles; in fact, as GMC points out, it responded with respect to 1986-1991 Sevilles. Meenach asked the court to order GMC to answer more fully, but the court denied his request as untimely. Meenach contends that this denial led to great prejudice at trial when GMC allegedly pointed out that Meenach had not shown the jury evidence of any previous accidents involving the same type of seat belt.
 
 
 16
 Meenach failed to object when those comments were made. In any event, the alleged prejudice is illusory. Meenach claims that GMC led the jury to believe that no GMC car since 1971 had been involved in an accident resulting from seat belt entrapment. In fact, such testimony was limited to 1986-1991 Sevilles. Meenach claims that at closing argument, GMC's counsel "implied that this was the only incident of seat belt entrapment that had ever occurred [in any GMC car]," but the record shows that counsel referred only to 1986-1991 Sevilles. (J.A. at 926-27.) Meenach's argument on this point is not well taken.
 
 D. Limitations imposed on closing arguments
 
 17
 The district court allowed each side 75 minutes for closing argument. The district court was well within its discretion in imposing this limitation on each side.
 
 
 18
 During argument, Meenach's counsel tried to use placards with replicas of parts of the trial transcript. The court allowed the placards but told counsel that he must paraphrase, rather than read, the transcript. Later, GMC objected to one of the placards because it did not include the proper context for some quotations. The court sustained the objection, instructing Meenach's counsel to remove the placard and to "just do it the way we normally do it, paraphrase the testimony." Meenach argues that these restrictions were unfair. The court's restrictions were well within its exercise of reasonable control under Rule 611(a) of the Federal Rules of Evidence. We find no error in any of the limitations imposed by the court on closing arguments.
 
 E. The use of depositions
 
 19
 At trial, Meenach wanted to play or read parts of several depositions. GMC objected because it planned to call these witnesses live during its case-in-chief. The court sustained this objection and assured Meenach's counsel that he would be allowed to play or read the deposition testimony if the witnesses did not appear live. As it turned out, two of the witnesses testified during GMC's case-in-chief, but two did not. The court then gave Meenach's counsel the chance to introduce the deposition testimony of the two who did not; counsel read excerpts from one of the depositions but declined to read from the other.
 
 
 20
 The court's ruling may or may not have technically violated the rule that "[t]he deposition of any witness ... may be used by any party for any purpose if the court finds ... that the witness is at a greater distance than 100 miles from the place of trial or hearing...." Fed.R.Civ.P. 32(a)(3)(B). Even if it did, however, Meenach suffered little prejudice. Any error that may have occurred was harmless and does not warrant reversal. See Fed.R.Civ.P. 61.
 
 
 21
 F. Meenach's motion for judgment as a matter of law
 
 
 22
 Meenach argues that the district court's denial of his motion for judgment as a matter of law should be reversed based on Embs v. Pepsi-Cola Bottling Co., 528 S.W.2d 703 (Ky.1975), which held that the permissibility of an inference of a defect when a bottle exploded was enough to allow the plaintiff to survive a motion for judgment as a matter of law. Meenach argues that under Embs, he should have been granted judgment as a matter of law because (1) it was undisputed that Rita Meenach was trapped by the seat belt and (2) there was no evidence to rebut the inference that the seat belt was defective. Emb's relevance is limited due to the different procedural posture; in any event, Meenach's two premises are flawed. First, it was not undisputed that Rita Meenach was trapped by the seat belt. Second, GMC presented evidence to rebut the inference that the seat belt was defective. The conflict on those points created a legitimate jury question.
 
 
 23
 Meenach also argued in his brief that GMC should have been estopped from denying that the lack of an inertia switch was a design defect by the judgment in Baker v. GMC, 159 F.R.D. 519 (W.D.Mo.1994). Three days before Meenach filed his reply brief, however, the Eighth Circuit reversed the district court's decision in that case. Baker v. GMC, 86 F.3d 811 (8th Cir.1996), petition for cert. filed, 65 U.S.L.W. 3342 (U.S. Oct. 22, 1996) (No. 96-653).
 
 
 24
 We find that the district court properly denied Meenach's motion for a directed verdict.
 
 III.
 
 25
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Because federal law governs, we need not address Meenach's discussion of Kentucky law on the effect of failure to instruct a jury properly, except to note that the claim of his brief headed "Errors in Instructions are Always Prejudicial" does not appear to be supported by the authority cited. See Risen v. Pierce, 807 S.W.2d 945 (Ky.1991); Farrington Motors, Inc. v. Fidelity Cas. Co., 303 S.W.2d 319 (Ky.1957)
 
 
 [2]
 At oral argument, Meenach's counsel paraphrased the district judge as having said, "I'm probably committing an error, but I'm not going to give the instruction." The district judge in fact stated only that he "may be wrong" and that he was "concerned" about this issue. An expression of honest uncertainty is not tantamount to an admission of probable error
 
 
 [3]
 This issue is addressed more fully in Section II(F) infra